**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**UNITED STATES OF AMERICA**

**v.**                    **Case Nos.:  3:07cr123/LAC/CJK**
                               **3:11cv185/LAC/CJK**

**TERRENCE OWDEN**

_____/

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and supporting memorandum of law (docs. 94, 95).  The Government has filed a response (doc. 106) and Defendant has filed a reply (doc. 108).  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

### PROCEDURAL BACKGROUND

Defendant was charged in a three count indictment with conspiracy to possess with intent to distribute 500 grams or more of cocaine ("Count One"),  possession with intent to distribute 500 grams or more of cocaine on a date certain ("Count Two") and possession of a firearm in furtherance of a drug trafficking crime ("Count Three") (doc. 15).  Defendant filed a motion to suppress all evidence found during a

search of his residence on October 7, 2007 on the basis that the supporting affidavit for the search warrant application contained false statements (doc. 29). Two days later, he filed an amended motion adding a claim that the initial warrantless entry into the residence by law enforcement was unjustified (docs. 33, 34). At the December 3, 2007, hearing, defense counsel withdrew the second motion, and the Government argued that because of the nature of Defendant's challenge to the warrant he had not met his burden under *Franks v. Delaware*, 438 U.S. 154, 172 (1978) and he was not entitled to a hearing (doc. 79 at 7–10). The court thus heard only argument from counsel before denying the motions (*id.* at 17; docs. 43, 44).[1]

After a two day jury trial, at which co-defendant Cecil Lee Williams, but not Defendant Owden testified, the jury found Defendant guilty on all three counts. It also found that the offense conduct charged in Counts One and Two involved five hundred (500) grams or more of cocaine (doc. 52).

The Presentence Investigation Report ("PSR") was disclosed to the defense on January 24, 2008 (doc. 63). Defendant was initially held accountable for four kilograms of cocaine, which yielded a base and total offense level of 30 (PSR ¶¶ 26–35). The Government objected, arguing that Defendant should be held accountable for six kilograms of cocaine (PSR ¶¶ 100–102), and the PSR was amended accordingly (PSR ¶26). The revised base and total offense level was 32 (PSR ¶¶ 26–35). Defendant had a criminal history category of I (PSR ¶ 39).

At sentencing the court overruled Defendant's objection to the quantity of cocaine attributable to him (doc. 89 at 8). Before the court imposed sentence the Government noted its belief that Defendant had information that would assist law

---

[1]The court also denied counsel's renewed motion to suppress at the close of trial (doc. 76 at 149–151).

enforcement, but that "to date he has refused to cooperate in any way" (*id*. at 9). The court sentenced Defendant to 196 months imprisonment, which consisted of a mid-range sentence of 136 months on Counts One and Two, to run concurrently, and a consecutive sentence of 60 months on Count Three. It also noted on the record that the sentence would have been the same regardless of its ruling on the guidelines objection (*id*. at 11).

On appeal, Defendant challenged only his convictions on Counts One and Two (doc. 88 at 3). He raised several issues, but the Eleventh Circuit found that only three merited discussion: the denial of his motion to suppress, the challenge to the sufficiency of the evidence, and the trial court's admission of the video tape of his arrest (*id.* at 12). A fourth issue, the propriety of a statement made by the prosecutor during closing arguments, which the defense characterized as a comment on Defendant's right to remain silent, was discussed in a footnote (*id*. at 12 n.7). The Eleventh Circuit affirmed Defendant's convictions (*id*. at 22; *United States v. Owden*, 345 F. App'x 448 (11th Cir. 2009)), and the United States Supreme Court denied certiorari on April 19, 2010. *Owden v. United States*, 130 S.Ct. 2134 (2010).

In the present motion, Defendant raises eleven grounds for relief. The Government opposes the motion in its entirety.

## STATEMENT OF FACTS[2]

On October 7, 2007, deputies from the Escambia County Sheriff's Office conducted a traffic stop on Cecil Lee Williams, who was speeding. As a result of Williams' suspicious behavior, deputies called a K-9 officer to the location. After the dog alerted, officers requested and were given permission to search the truck. They

---

[2] The facts are summarized from the Eleventh Circuit's opinion on appeal (doc. 88) and Defendant's PSR.

discovered three one kilogram packages of suspected cocaine in the tool box of the truck. Williams was arrested and agreed to cooperate. He told officers that he was delivering the three kilograms of cocaine to "MeMe" (later determined to be Joseph Posey), and an associate whom he believed to be MeMe's cousin (later determined to be Defendant) at a residence in Pensacola. Williams also admitted that he had brought one kilogram of cocaine to MeMe and Defendant at the same house two weeks earlier. On that occasion, he had called MeMe as he was exiting the highway, then drove to the house where Defendant met him and instructed him to pull around back. Defendant took the drugs from Williams and put the bag in a small windowless shed or storage room where Williams observed a gun. After his arrest on October 7, Williams placed a recorded call to MeMe under the supervision of DEA Special Agent David Humphreys to advise MeMe that Williams' truck had broken down and he did not want to get caught with the "stuff." MeMe purportedly told Williams that he was in Texas, but that he would call his cousin, and a few minutes later Defendant called Williams. Defendant called Williams several more times as he drove to meet him. When Defendant arrived, he pulled along side the truck and took the bag that Williams handed him from the tool compartment, the contents of which had been removed and substituted with "sham" cocaine. Law enforcement immediately approached and arrested the two men. Defendant attempted to move or run away, but was apprehended without incident.

Williams and Defendant were placed in separate patrol cars, and unbeknownst to law enforcement, Williams had another cell phone in his possession which he used to call both MeMe and "Primo," the individual who was the source of the drugs. Williams explained at trial that he was afraid of the two men and did not want them

to know he had been cooperating. Defendant had two pre-paid cell phones in his possession at the time of his arrest. The phones were from different calling areas, and one of them matched calls made to Williams and MeMe.

Law enforcement sought a search warrant for Defendant's residence where Williams was to have delivered the cocaine. The affidavit in support of the warrant application was based on Williams' statements and information overheard by the law enforcement officers who listened to Williams' side of the calls with MeMe and Defendant after his arrest. While awaiting the warrant, Agent Humphreys went to Defendant's residence where he found six people, including MeMe's and Defendant's mothers on the porch. Humphreys entered the house and the adjoining locked room[3] to secure the premises but did not conduct a search. After the warrant arrived law enforcement searched the shed where they discovered surveillance equipment which enabled anyone inside to observe the street and driveway. They also found, among other things, scales with drug residue, baggies, baking soda, marijuana, and a loaded pistol. Defendant and Williams were indicted. MeMe was an "unindicted co-conspirator."

## LEGAL ANALYSIS

### General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that

---

[3]The small room, or shed, as it is variously referred to appeared to be a converted storage room that now had air conditioning. It was located at the top of the driveway adjacent to the house, with which it shared a roof. According to Defendant's mother, the shed was kept locked and he had the only key, which was in his possession at the time of his arrest.

(1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not

actionable in a section 2255 motion and will be considered procedurally barred. *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n. 14 (quoting *Mills*, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Patterson*, 595 F.3d, 1324, 1328 (11th Cir. 2010). The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show a violation of his constitutional right to counsel, a defendant must demonstrate both that counsel's performance was

below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686; *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 585 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (citing *Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941

F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See Chandler v. McDonough*, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore*, 175 F.3d 915, 922 (11th Cir. 1999) ("To be

entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada*, 941 F.2d at 1559; *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

Ground One: Counsel's prior representation of unindicted co-conspirator

Defendant contends that his attorney, William Richbourg, had previously represented unindicted co-conspirator Joseph Roy Posey (a/k/a MeMe) in an unrelated criminal matter, and that his representation colored his representation of Defendant in these proceedings. Specifically, Defendant asserts that counsel never discussed the possibility of cooperation or testifying against Posey pursuant to a plea and cooperation agreement, and that this is proof of counsel's conflict of interest.

The United States Supreme Court has held that the mere possibility of a conflict of interest is insufficient to impugn a criminal conviction, and that in order to demonstrate a Sixth Amendment violation based on an attorney's alleged conflict of interest, a defendant must establish both an actual, rather than a speculative, conflict of interest and an adverse effect on the lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980); *see also Mickens v. Taylor*, 535 U.S. 162 (2002); *Owen v. Secretary of Dept. of Corrections*, 568 F.3d 894, 913 (11th Cir. 2009). An actual conflict of interest is a conflict that affects counsel's performance, as opposed

to a mere theoretical "division of loyalties." *Mickens*, 535 U.S. at 171;[4] *see also Caderno v. United States*, 256 F.3d 1213, 1218 (11th Cir. 2001) (a hypothetical or speculative conflict does not violate the constitution) (citations omitted). A defendant must show specific instances in the record that demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *Caderno*, 256 F.3d at 1218; *Porter v. Singletary*, 14 F.3d 554, 560 (11th Cir. 1994) (defendant must show "specific instances in the record which suggest an impairment or compromise of his interests for the benefit of another party."). In order to prove an adverse effect, defendant must show (1) a plausible alternative defense strategy that counsel might have pursued; (2) that the alternative strategy was reasonable; and (3) some link between the actual conflict and the decision to forego that strategy. *Brownlee v. Haley*, 306 F.3d 1043, 1064 n.17 (11th Cir. 2002); *Aguilar-Garcia v. United States*, 517 F. App'x 880, 882 (11th Cir. 2013) (quoting *Reynolds v. Chapman*, 253 F.3d 1337, 1343 (11th Cir. 2001)). Or, he might "demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *Porter*, 14 F.3d at 560–61. Once a Defendant shows that a conflict actually affected the adequacy of the representation, he need not demonstrate prejudice. *Cuyler*, 446 U.S. at 349–350 (citing *Holloway v. Arkansas*, 435 U.S. 475, 487–491 (1978). Conversely, a defendant who has not shown that counsel "actively represented conflicting interests" has not established the constitutional predicate for an ineffective assistance of counsel

---

[4] For instance, in <u>Wood v. Georgia</u>, 450 U.S. 261 (1981), counsel for the defendants, who were former employees of an "adult" theater and bookstore, had been hired by defendants' employer. *Id.* at 272. At sentencing, in lieu of arguing for leniency that might have resulted in substantial reductions in, or deferrals of, the fines, counsel made a constitutional attack on the statute, leading the Supreme Court to speculate that the employer and defendants' counsel were seeking to "create a test case". *Id.* at 267, 272. The Court remanded the case to the state court for a hearing to determine whether an actual conflict existed. *Id.* at 273.

claim. *Cuyler*, 446 U.S. at 350. Similarly, if counsel's alleged conflict cannot be linked to any deficiencies in performance, any presumed conflict does not present a basis upon which to overturn defendant's conviction. *Brownlee*, 306 F.3d at 1064 n. 17.

Defendant contends in this case that despite the in-depth discussions Defendant had with counsel prior to trial, at no point did counsel "either propose the possibility of entering into a plea and cooperation agreement with the aim of facilitating the investigation and prosecution of Posey or disclose that he had in fact represented Posey in a prior, unrelated, criminal matter." (Doc. 95 at 1–2).

Former defense counsel has outlined his representation of Posey in the affidavit submitted in response to Defendant's motion (doc. 97). No actual conflict of interest is apparent. Furthermore, the undersigned has found no indication that Mr. Posey has been charged at any point in federal court on this matter. Thus, there was no opportunity for Defendant to testify against Posey. To the extent Defendant maintains that he was denied the opportunity to cooperate, this unsworn assertion[5] is contradicted by both counsel's affidavit and the Government's comment at sentencing that Defendant had been unwilling to cooperate (doc. 89 at 9).

Defendant also suggests that the trial court should have conducted a *sua sponte* inquiry into a potential conflict based on counsel's prior representation of Posey. However, the excerpt of testimony cited by Defendant would not have placed the court on notice about prior representation, as Defendant suggests (*see* doc. 95 at 2–3,

---

[5]The court would not make a credibility determination in the face of conflicting affidavits. However, in this case, only counsel has submitted an affidavit.

5). Regardless, the court finds that there was no conflict and counsel was not constitutionally ineffective.

Ground Two: Failure to discuss sentencing ramifications of proceeding to trial

Defendant next claims that counsel was constitutionally ineffective because he did not discuss the various sentencing ramifications of a guilty plea versus a jury verdict, such that Defendant's decision to go to trial was neither knowing nor intelligent.

Where a defendant challenges a not-guilty plea based on ineffective assistance of counsel, he "must show that there is a reasonable probability that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial." *Glover v. United States*, 522 F. App'x 720, 723 (11th Cir. 2013) (quoting *Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir.1995)); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In this case, Defendant maintains that counsel explained only that his sentence might range from five to 40 years, but failed to explain the implications of the quantity of drugs attributable to him or the fact that a § 924(c) conviction would mandate a consecutive five year term in addition to the sentence he received on the drug charges. Defendant claims that counsel's failure to adequately discuss potential sentencing outcomes undermined Defendant's ability to make an intelligent choice to proceed to trial and forego plea negotiations. He asserts that if counsel had properly advised him, he would have elected to plead guilty rather than proceed to trial.

Defendant's unsworn assertions regarding his conversations with counsel are both supported and explained by counsel's affidavit. Counsel states that even before

the indictment was filed, the Government had offered Defendant the option to enter a plea to the drug charge only, and in exchange it would not file on the firearm charge (doc. 97 at 3). Counsel described Defendant as "not concerned;" Defendant's position was that the firearm had nothing to do with the case as shooting was merely a hobby (*id.*). Counsel does not dispute Defendant's assertion that there was "only minimal discussion ... regarding potential sentencing outcomes following a conviction" (doc. 95 at 6). Counsel states that he and his client "never got very far with any attempt to discuss those matters [because Defendant] insisted on his innocence and refused to even discuss the implications of any conviction (doc. 97 at 3). Defendant's unsworn assertion that he would have entered a plea of guilty had he understood his potential sentencing exposure on the firearm charge has no credible support anywhere in the record. The court again notes the Government's comment at sentencing that as of that date, Defendant had refused to cooperate in any way (doc. 89 at 9). The utter lack of substantiation of Defendant's claim defeats his ineffective assistance of counsel claim. *See Saunders v. United States*, 278 F. App'x 976 (11th Cir. 2008) (district court found that defendant failed to show prejudice when he failed to present information regarding what sentence he may have pled guilty to and provided no description of any plea offer).

Ground Three: Counsel's abandonment of Amended Motion to Suppress

Before trial, Defendant challenged the validity of a search of Defendant's residence and the small, locked room adjoining the residence. In Defendant's original motion to suppress, he argued that the affidavit in support of the search warrant contained either deliberate falsehoods or statements that demonstrated a reckless disregard for the truth in that it mischaracterized the contents of a telephone

conversation between Williams and "MeMe" (doc. 29 at 2). Defendant filed an amended motion to suppress in which he renewed the arguments made in the original motion, but also added a claim that the search of his residence, with specific focus on the locked room, was improper because it was done without a search warrant (doc. 33). The amended motion was filed after counsel reviewed the grand jury testimony of DEA Special Agent David Humphreys, and learned that the residence, including the room alleged to be under Defendant's exclusive control, was "secured" before agents obtained a search warrant, and searched thereafter (*id.* at 2–3). Defendant argued that based upon facts known to law enforcement at the time, there were no exigent circumstances justifying the forced entry into the locked room (*id*. at 3). The defense abandoned the claim raised in the amended motion at the hearing, conceding that, as argued by the Government, a valid warrant would cure the illegal entry. Defendant now contends that counsel's decision to concede this issue was constitutionally ineffective.

The parties disagree on whether *Segura v. United States*, 468 U.S. 796 (1984), is applicable to the facts of Defendant's case. In *Segura*, the court held that "securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of the dwelling or its contents" while reaffirming that absent exigent circumstances, a warrantless search is illegal. 468 U.S. at 810. In *Segura*, law enforcement arrested and entered the apartment of a known drug dealer, and after conducting a limited security check to ensure that there was no one else present who could either pose a threat to their safety or destroy evidence, secured the apartment and remained inside for 19 hours until a search warrant was issued. The Court noted that if law

enforcement had never entered the apartment but rather had conducted a perimeter stake out to prevent anyone from entering the apartment and destroying evidence, the challenged contraband would have been discovered and seized, and thus the legality of the initial entry was irrelevant. *Id.* at 814–815. Suppression is not justified, then, unless the challenged evidence is in some sense the product of illegal governmental activity. *Id.* at 815. In *Segura*, as in this case, the entry into the residence or area in question "did not contribute in any way to discovery of the evidence seized under the warrant" because there was a basis for the warrant independent of law enforcement's allegedly unlawful entry. Therefore, the testimony of Agent Humphreys, as relied upon by Defendant, was that the agents believed there to be extenuating circumstances, and more importantly, that they *secured* the residence but did not *search* it until after they obtained a state search warrant. Thus, under *Segura*, the validity of the search warrant cured the impropriety, if any, of the initial seizure. Counsel was not constitutionally ineffective for conceding this claim.

Ground Four: Introduction of inflammatory evidence

During the trial, unindicted co-conspirator Joseph Posey was identified by photograph. The Government introduced into evidence a photograph of Posey and other unidentified males, standing in front of a poster that contained the words "stop snitching" (doc. 76 at 134–135, Gov. Exh. 32). Although Defendant contends that this exhibit was introduced "without objection," and the Government made its rebuttal argument based on this assumption, the record reflects that counsel did object to the introduction of the photograph in question (doc. 76 at 134). To the extent the defense meant to contend that counsel should have objected on a different basis, the court finds that the case cited by Defendant does not support exclusion of the

photograph in question. *See United States v. Phaknikone*, 605 F.3d 1099, 1108–1109 (11th Cir. 2010) (holding that it was harmless error to admit a photograph of a defendant charged with bank robbery depicting the defendant holding a gun while sitting in a car with a child in the back seat). Thus, Defendant has failed to show that counsel's performance was constitutionally deficient.

Ground Five: Failure to request jury instruction

Defendant contends that co-defendant Williams, who was the primary witness against him in this case, was no longer part of the charged conspiracy once Williams was arrested and began to cooperate with the Government. Therefore, he asserts, counsel should have requested an instruction regarding the impossibility of conspiring with a Government informant. Defendant is correct that the failure to request appropriate jury instructions can amount to a cognizable ineffective assistance of counsel claim. *See United States v. Luck*, 611 F.3d 183 (4th Cir. 2010). Defendant is also correct that conspiracy does not lie where the only participants are a defendant and a government informant. *United States v. Arbane*, 446 F. 3d 1223, 1228 (11th Cir. 2006). However, that is not the situation presented in this case. Williams did not become a "government informant" until after his arrest. A conspiracy does not automatically terminate simply because the Government, unbeknownst to some of the conspirators, has defeated the conspiracy's object. *United States v. Jiminez Recio*, 537 U.S. 270, 274 (2003). Even if counsel had been able to convince the jury that Defendant did not conspire with Williams once Williams began cooperating after his arrest, there was other evidence of a conspiracy, including Williams' testimony that he had delivered one kilogram of cocaine to MeMe and Defendant two weeks prior, MeMe's role in the events on the date of Defendant's arrest, and the items discovered

in the locked room at Defendant's residence.  Finally, to the extent Defendant might argue that the "drugs" in question were fake, this fact is legally insignificant with respect to the charged conspiracy.  "Because the act of conspiracy is complete upon the formation of an illegal agreement, a defendant can be convicted of conspiracy to aid in the distribution of drugs even if those drugs are fake."  *See United States v. Thomas*, 690 F.3d 358, 369 (5th Cir. 2012) (quoting *United States v. Burke*, 431 F.3d 883, 886 (5th Cir. 2005)).  Defendant is not entitled to relief on this ground.

Ground Six: Failure to object to hearsay statements

Defendant contends that because Williams began cooperating immediately after his arrest, any statements he made to Agent Humphreys were inadmissible hearsay to which counsel should have objected.  Defendant also argues that to the extent Humphreys repeated portions of Williams' testimony, this was impermissible bolstering of Williams' credibility.

The court has reviewed with particular care the testimony of Agent Humphreys in an attempt to discern the "litany of statements" of which Defendant complains, but does not specifically identify.  After this review, the court concludes that to the limited extent that Humphreys testified about things that Williams said, such testimony was not offered to prove the truth of Williams' statements, but rather to provide background and explain the reason for the actions of law enforcement and the manner in which the investigation progressed. The same is true of Humphreys' testimony regarding the fact that he was told that Defendant had the only access to the locked room.  As a result of having been told this, Humphreys had another agent retrieve Defendant's keys from the impound lot.  Counsel made objections where appropriate during Humphreys' testimony, a number of which were sustained, and he

was not constitutionally ineffective for his failure to object to the testimony of which Defendant now complains.  Even if the disputed evidence had been excluded, the Eleventh Circuit determined that there was sufficient evidence to support a conviction for conspiracy based on Williams' testimony and Defendant's actions on the date of his arrest consistent with an agreement to distribute cocaine, neither of which is hearsay.  *See United States v. Owden*, 345 F. App'x at 456.  Defendant's claim for relief on this ground fails.

Ground Seven: Failure to object to testimony about drug paraphernalia or request limiting instruction

Defendant contends that counsel should have objected under either Federal Rule of Evidence 403 or 404(b) to the introduction of evidence pertaining to his personal use of marijuana that was seized from the small room.  Defendant contends that admission of this evidence invited the jury to convict on the basis of other crimes not charged in the indictment.

The relevance of the evidence to the charged conspiracy was tangential at best. However, as noted by the Eleventh Circuit, the evidence against Defendant with respect to the charged crimes was "overwhelming."  *United States v. Owden*, 345 F. App'x at 453 n.7.  Defendant has not shown that the outcome of his case would have been any different had counsel made the objection and had the evidence been excluded.

Ground Eight: Introduction of evidence regarding unrelated criminal matter

Defendant notes that during defense counsel's cross examination of Agent Humphreys regarding Posey's arrest in May of 2007 for unrelated drug charges, counsel asked Humphreys to identify the vehicle that Posey was driving.  It was the

same vehicle that Defendant was driving when he was arrested. Defendant claims that counsel's pursuit of this line of questioning was "negligent" and legally deficient under <u>Strickland</u> because it cemented the connection between Defendant and Posey.

Defense counsel explains in his affidavit that this information was intended to disprove the Government's theory that Defendant was the only one with access to the small room where law enforcement recovered the firearm and drug related evidence (doc. 97 at 4). Because the key to the small room was on the same key ring with the car keys for the car that Defendant was driving at the time of his arrest, whoever had the car also had the key to the small room and could have access to it, as reiterated by counsel in his closing argument (doc. 76 at 172). Thus, by eliciting testimony showing that Posey had access to the car and thus access to the room, counsel weakened the Government's position that Defendant alone had access and was alone responsible for its contents, most importantly, the firearm (*id*.). This was not unreasonable trial strategy and Defendant has failed to show that counsel's decision to pursue this strategy was constitutionally ineffective.

Ground Nine: Failure to object or move for mistrial during Government's closing

Defendant asserts that during the Government's closing argument, Assistant United States Attorney Thomas Swaim made statements that were "tantamount to impermissible burden shifting" to which counsel should have objected (doc. 95 at 15). Specifically, Defendant refers to the Government's argument that " . . . I would suggest to you, that is outrageous. But that's how desperate this Defendant is and his counsel is to convince you that he's not guilty in light of what we would suggest is overwhelming evidence" (doc. 76 at 189). Defendant posits that the prosecutor's statement improperly suggests that Defendant had an obligation to produce evidence

to prove his innocence. *See United States v. Simon*, 964 F.2d 1082, 1086–1087 (11th Cir. 1992). The very case cited by Defendant also notes that a prejudicial remark may be rendered harmless by curative instruction to the jury because a jury is presumed to follow jury instructions and specifically that a prejudicial comment by the prosecutor which may result in a shifting of the burden of proof can be cured by a court's instruction regarding the burden of proof. *Id*. at 1087 (citations omitted). In this case, the court's instructions stated no fewer than three times that the Government had to prove Defendant's guilt beyond a reasonable doubt or that Defendant did not have to prove his innocence or present any evidence at all (doc. 49). Thus, because the court's instructions cured any prejudice from the Government's comment, Defendant was not prejudiced by counsel's failure to object or move for a mistrial as to this comment.[6]

Ground Ten: Ineffective assistance of appellate counsel

Defendant contends that counsel was constitutionally ineffective for his failure to argue on appeal that there was insufficient evidence to support Defendant's conviction on Count Three of the indictment, possession of a firearm in furtherance of a drug trafficking crime. Defendant states that there was no eyewitness testimony as to active use, actual possession, or carrying of the firearm at issue, and notes counsel had preserved the issue for appeal through his motion for judgment of acquittal. Defendant asserts that this claim had "some substantive merit" and its omission was prejudicial to him.

---

[6]The Government argues that defense counsel did object and move for a mistrial and that this issue was also litigated on appeal (doc. 106 at 14). However, the defense objection was to the Government's perceived comment on Defendant's right to remain silent, not the comment at issue herein (*see* doc. 76 at 196–197; *United States v. Owden*, 345 F. App'x 448, 453 n.7 (11th Cir. 2009)).

Due process of law requires that a defendant receive effective assistance of appellate counsel on his direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). However, the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, decides not to do so. *Smith v. Robbins*, 528 U.S. 259, 287–88 (2000); *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983); *Heath v. Jones*, 941 F.2d 1126, 1130–31 (11th Cir. 1991). It is possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate in such a situation that counsel's performance was constitutionally ineffective. *Smith*, 528 U.S. at 288 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")); *see also Payne v. United States*, 566 F.3d 1276, 1277 (11th Cir. 2009) (citing *Smith*). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Barnes, 463 U.S. at 751–52. In fact, this is the "hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986). The mere fact that one of the non-appealed issues might have been successful does not preclude a finding that counsel's performance, which must be judged in its entirety, was effective. *Id.*; *Heath*, 941 F.2d at 1131 (counsel's appellate advocacy must be judged in its entirety).

To determine whether defense counsel rendered ineffective assistance by failing to raise certain issues on appeal, the court must examine the merits of the issues the defendant alleges counsel was derelict in not raising on appeal. *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988); *Reutter v. Secretary for Dept. of*

*Corrections*, 232 F. App'x 914, 917 (11th Cir. 2007) (determining that counsel's decision not to raise a particular argument on appeal, in light of his having raised several important claims, was likely a strategic decision to "winnow out weaker arguments") .   Of course, appellate counsel is not ineffective for failing to raise claims "reasonably considered to be without merit." *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (citations omitted); see also *Lambrix v. Singletary*, 72 F.3d 1500, 1507 (11th Cir. 1996); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000).  And, where the case law at the time of the direct appeal is not clear on an issue, appellate counsel's performance does not fall below the "objective standard of reasonableness" for failing to raise it.  *See Jones v. United States*, 224 F.3d 1251, 1258–59 (11th Cir. 2000); *Chateloin v. Singletary*, 89 F.3d 749, 754 (11th Cir. 1996). An informed decision based on reasonable professional judgment not to pursue a particular issue on appeal does not render counsel's performance deficient.  *See Griffin v. Aiken*, 775 F.2d 1226, 1235 (4th Cir. 1985) (analyzing *Barnes*).

Defendant is correct that the mere presence of a gun within a defendant's dominion and control during a drug trafficking offense is insufficient to sustain a § 924(c) conviction.  *See United States v. Williams*, 731 F.3d 1222, 1232 (11th Cir. 2013).  Here, however, there are other factors relevant to the determination of whether the weapon was possessed in furtherance of the unlawful activity, including: "(1) [t]he type of drug activity that is being conducted; (2) accessibility of the firearm; (3) the type of the weapon; (4) whether the weapon is stolen; (5) the status of the possession (legitimate or illegal); (6) whether the gun is loaded; (7) proximity to the drugs or drug profits; and (8) the time and circumstances under which the gun is found." *Id*. at 1232 (quoting *United States v. Woodward*, 531 F.3d 1352, 1362 (11th

Cir. 2008) (internal quotations omitted). In this case, the loaded gun was found in a locked room that was equipped with video surveillance devices and contained what appeared to be drug processing and packaging materials (doc. 76 at 151–154; PSR ¶ 17). And, the fact that Defendant did not take the gun with him when he went to meet Williams to pick up the cocaine, taking the evidence in the light most favorable to the Government, was neither unreasonable nor proof that the firearm was not possessed during and in relation to a drug trafficking offense. Defendant left the premises hurriedly and unexpectedly as the original plan was that the cocaine would be dropped off, as had been the case for the prior delivery. More significantly, Defendant and his cousin had a prior relationship with Williams, and had trusted him enough to drop off cocaine at Defendant's residence, so there was arguably little reason for Defendant to believe that a firearm would be necessary at that time.

This court's review of the record reveals ample evidence for the jury to distinguish the loaded .40 caliber Biretta handgun and ammunition in the locked room from "innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard." *Williams*, 731 F.3d at 1233 (quoting *United States v. Timmons*, 283 F.3d 1246, 1253 (11th Cir. 2002)). Counsel was not constitutionally ineffective for his failure to raise this claim on appeal.

Ground Eleven: Cumulative Error

Defendant's final claim for relief is a claim of cumulative error. Defendant claims that the multiple errors raised in his § 2255 motion, while alone non-reversible, so prejudiced his right to a fair trial that a new trial is required. To the extent a claim for cumulative error based on ineffective assistance of counsel will lie, cumulative error analysis should evaluate only matters determined to be in error, not

the cumulative effect of non-errors. *See United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004) (where no individual errors have been demonstrated, no cumulative errors can exist); *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."); *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it. Twenty times zero equals zero."); *Sneed v. Fla. Dep't of Corr.*, 496 F. App'x 20, 28 (11th Cir. 2012) (absent errors, there are no errors to accumulate). Thus, he has shown no basis for relief on this ground.

## Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The motion to vacate, set aside, or correct sentence (doc. 94) be **DENIED**.

2.  A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 22nd day of November, 2013.


/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**

Case Nos.: 3:07cr123/LAC/CJK; 3:11cv185/LAC/CJK